Matthew Hayman *vs.* Union Corporation.

DECEMBER 18, 1940.

REARGUMENT DENIED JANUARY 28, 1941.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

12

BAKER, J. This is an action of trespass on the case for negligence in which a jury in the superior court returned a verdict for the plaintiff for $15,000. The trial justice denied the defendant's motion for a new trial, and the latter thereupon duly prosecuted its bill of exceptions to this court. The case is now before us on said bill of exceptions containing one hundred thirty-four exceptions, some seventy-four of which are being pressed.

The accident which is the basis of the present case happened on September 3, 1937 about 9:30 o'clock a. m. The plaintiff, who conducted a tailoring business in Providence and who, on the above date, was about fifty-nine years old, entered an office building owned by the defendant and situated in that city. In so doing his purpose was twofold. He carried a package which he wished to deliver to a friend who was the superintendent of the building, and he also desired to visit, for business purposes, certain banking rooms located on the street floor.

14

The plaintiff entered the building by one of the main doors which opened into a rather narrow corridor about fifty feet long. On his right were an entrance to the said bank and three elevator doors. The corridor was lighted by overhead hanging lights which were then on. At the extreme end of the corridor opposite the said door, and on the right side as one entered the building, a stairway occupying half the width ascended to the second floor. On the left side of the end of the corridor, next to the above-mentioned stairway and occupying the remaining width, was a steep flight of stairs leading down to the basement of the building.

The corridor floor was constructed of squares of light colored marble in which were set strips of black marble forming a geometric design. The greater part of the walls and also the end of the corridor, where the above-mentioned stairs led to the basement, were of highly polished, light colored marble in a panel design from which light was readily reflected. Black marble was used to outline the light marble on the walls and end of the corridor, and also as a base at the junction of the floor and walls. The well of the basement stairway was entirely of a dark colored marble almost black, called French gray, also highly polished, and a door at the foot of the stairs was of dark mahogany. Over this door was a small light. The treads on this stairway were of a light colored marble.

After entering the defendant's building as aforesaid, the plaintiff, who had never before been further along the corridor than the entrance to the elevators, and who did not know where the superintendent's office was, went directly to the end, passing by the doors to the banking rooms and the elevators, and stopped slightly to the left of the middle of said corridor very near both stairways. He then asked a man, who was a short distance up the stairs which gave access to the second floor, and who was cleaning said stairs, if the superintendent of the building was around. This man

made some remark and pointed in the general direction of the stairs leading to the basement, the evidence showing that the superintendent had an office in that portion of the building. The plaintiff then took a step forward, put out his hand as if to open a door and immediately fell down the basement stairs, thereby suffering the injuries for which he seeks to recover in the present case.

In substance the plaintiff's contention is that the stairway constituted a hidden danger known to the defendant but unknown to him; that, therefore, the defendant had the duty to guard said stairway or to warn him of existing conditions; that such danger was due to the manner in which the stairway and corridor were constructed, particularly in connection with the use and arrangement of different colored marbles, and to the lighting of the stairway and corridor; that such construction and lighting were intentional, so as to render the existence of the stairway at the end of the corridor less apparent; and that, because of the existence of this deceptive condition, he had an optical illusion that there was a doorway at the point where the stairs descended.

Before trial the defendant moved that the plaintiff's writ and declaration be dismissed on the ground of *res adjudicata,* alleging that at the trial of a prior action between the same parties concerning the same accident the plaintiff had, after resting his case, on motion of the defendant been adjudged nonsuit by a justice of the superior court, on the ground that the plaintiff was guilty of contributory negligence as a matter of law; and also alleging that, on said nonsuit, a judgment had been entered for the defendant which acted as a bar to the bringing of the instant case. This motion to dismiss was denied by a justice of the superior court, to which ruling the defendant is now pressing its exception. The same point was also raised by the defendant during the trial of the present case under pleas of *res adjudicata* and *stare decisis*, and to adverse rulings by the trial justice the defendant

duly excepted. These exceptions may be considered together as they relate to the same issue.

In our opinion the defendant takes nothing by these exceptions. Whatever may be the law in other jurisdictions, particularly where the statutes in question differ from ours, it has long been settled in this state that a plaintiff, under the circumstances disclosed herein, may properly commence a new action for the same cause within a limited time. The language of our statute, G. L. 1938, chap. 510, § 9, is broad and has been liberally construed by this court as being remedial in nature. *Robinson* v. *Merchants' & Miners' Trans. Co.,* 16 R. I. 637; *Sullivan* v. *White,* 36 R. I. 488; see also, *Gray* v. *Ahern,* 63 R. I. 363, 9 A. 2d. 38.

In the *Sullivan* case, *supra,* the court stated, at page 491: "We find, however, no sufficient reason for overruling the long continued practice in this state and the former decisions of this court that a nonsuit does not constitute an adjudication of a case upon its merits." And again, at page 493: "The authority of *Robinson* v. *Merchants' & Miners' Trans. Co.,* cannot be belittled by characterizing the language quoted as dictum; and there is no qualification of the judicial determination that under the practice in this state a nonsuit is not *res adjudicata.*" We find, therefore, that the disposition of the previous case by way of nonsuit on the ground of plaintiff's contributory negligence is no bar to the present action, and the defendant's above exceptions are overruled.

After the instant case had been on trial about eight days the defendant moved that it be taken from the jury and passed, on the ground that one of the jurors, two weeks prior to the starting of the trial involved herein, had herself been nonsuited by the present trial justice in a case brought by her to recover damages by reason of an alleged fall in a market, and that in her bill of particulars on file in that case the juror complained, among other things, of nervous shock,

fear of falling and "great discomfiture of mind." The trial justice denied the defendant's motion on the ground that under the circumstances he did not consider that the defendant would be prejudiced by the presence of the juror in question on the panel, and also that the defendant had delayed unduly in making its motion, in view of the fact that it had had knowledge since the opening day of the trial that the juror had been nonsuited. We are of the opinion that, in view of the above facts, the matter rested within the sound discretion of the trial justice. We find nothing to indicate that the trial justice abused his discretion in denying defendant's motion, and its exception in this connection is overruled.

The defendant moved that the trial justice direct a verdict in its favor, and now contends that the latter's refusal to so rule was error. This motion was based on several grounds. The question of whether or not the previous case was *res adjudicata* of the present action has already been considered. The other chief grounds urged were that the defendant was guilty of no conduct in respect to the plaintiff which would entitle the latter to recover, and also that he was guilty of negligence as a matter of law which contributed to his own injury.

The defendant first contended that the evidence showed that the plaintiff was a bare licensee and, therefore, that he could not recover for conduct which was merely negligent on the part of the defendant, unless it also amounted to willful, wanton and reckless conduct on its part, no statutory duty by the defendant being involved. The plaintiff, on the other hand, argued that, under the facts and circumstances appearing in evidence, he could succeed in the present case provided the evidence reasonably warranted the jury in finding the defendant guilty of negligence, and that he himself was free from any contributory negligence. He also maintained, however, that, if he was obliged to show by a fair

preponderance of the evidence that the defendant was guilty of willful, wanton and reckless conduct, as it contended, then he had sustained that burden.

The trial justice, on this issue, adopted the defendant's view of the law, but ruled that the evidence raised questions of fact for the jury to determine in the first instance on both questions, *viz.*, whether or not the defendant was guilty of willful, wanton and reckless conduct in maintaining the stairway in question, and whether or not the plaintiff contributed to his injuries by any negligence on his part.

It is, of course, well settled that, on the defendant's motion for a directed verdict, the court must view the evidence in the light most favorable to the plaintiff. The latter's principal contention in that respect has already been set out. The plaintiff, who wore glasses, after giving evidence that at the time of the accident he had no knowledge of the existence of the stairway in question, testified as follows: "Q. What did you see as you entered the hall? A. I saw what I can say was a black space which looked to me, with the lighting they had that morning, like a door that you go into. Q. Did you see any stairs on that side? A. I positively did not." He also testified as follows as to his conduct after speaking to the man cleaning the stairs leading to the second floor: "Q. When you took the step in that direction where did you think you were going? A. I thought I was going into another room. Q. And how were you going to get into that room? A. I put out my hand, as I thought, to open the door." His testimony in general tended to support his contention, hereinbefore referred to, that, as he proceeded down the corridor, the structure and lighting thereof created the optical illusion that there was a door of some kind approximately where the stairway actually descended to the basement, which stairway, by reason of the above-mentioned conditions, he did not see.

In support of the plaintiff, an experienced building contractor testified in substance that, because of the effect on a

person's eyes after coming into the building from outside, of the lighting in the corridor itself and of the general color arrangement of the various marbles used therein, there was an appearance of confusion of the floor and the walls, and that the stairway was obscured to ordinary observation. This witness also gave evidence as follows: "Q. Would good building, Mr. Merchant, in your opinion as an expert call for a safeguard of some type, such as that at the top of that stairway, because of the construction, and by construction I mean marble and color and everything such as you have described? A. It would." On cross-examination the same witness, in stating his reasons for his opinion, testified further: "If you were looking for a stairway you might say, there is the stairway. If you did not have a stairway in mind you wouldn't think of finding a stairway there. It looks like a continuation of a dark floor behind the other stairs."

Several witnesses for the defendant testified, in substance, that immediately after the accident the plaintiff told them that he thought there was a door where the head of the stairs was, and that he put out his hand to open the door and fell. The evidence was conflicting as to whether or not the small light over the door at the foot of the stairway was burning at the time of the accident; as to the degree of brightness of the lighting in the corridor at that time; as to whether or not such lighting was intensified at the time of the trial over what it had been when the accident occurred; and also as to certain experiments made by the defendant in connection with the small light hereinbefore referred to.

Evidence for the defendant tended to show that the stairway in question had been maintained for a considerable number of years in the same condition it was in at the time of the plaintiff's accident; that it was properly constructed by competent architects and builders; that it complied with the building laws of the city of Providence and that the building inspector of that city had never questioned its lay-

out or construction. Two building contractors, who were expert witnesses for the defendant, testified, in substance, that in their opinion good construction did not require any guard at the top of the staircase. The defendant's contention in general was that at the time of the accident the lighting in the corridor was ample; that the stairway in question was perfectly visible to anyone using reasonable care, and that no illusion of any kind was created by the arrangement and colors of the marble used.

We have considered all the evidence in the case, and are of the opinion that the trial justice was correct in denying the defendant's motion for a directed verdict. In our judgment such evidence presented disputed questions of fact for the jury to decide in the first instance. These were whether or not the plaintiff was guilty of contributory negligence; and, under the view of the law adopted by the trial justice, whether or not the defendant was guilty of willful, wanton and reckless conduct in so constructing, lighting and maintaining the hallway and stairs as to create a dangerous condition; and to cause the plaintiff, without knowledge of that danger, to be deceived and misled to his injury thereby; and whether such conduct was the proximate cause of the plaintiff's deception and injury. We have considered the defendant's contention that no act or omission of the defendant was the proximate cause of that injury, and we find no merit in such contention. The defendant's exception to the refusal of the trial justice to direct a verdict in its favor is, therefore, overruled.

The defendant has a large number of exceptions to the charge to the jury, as given by the trial justice, and also to his refusal to grant its thirty-three requests to charge. It is neither possible nor necessary to discuss all of these exceptions in detail. They have all been carefully considered. In our opinion the charge of the court satisfactorily covered the issues which the jury was called upon to decide. It is settled

that a defendant is not entitled to have the trial justice charge the jury in any particular form of language. In our judgment the law on the question of burden of proof was reasonably covered, considering the charge as a whole, and that the jury was not misled in that connection. Also, the trial justice specifically stated that, in using the term "negligence" in his charge, he was referring to willful, wanton and reckless conduct on the part of the defendant, and his explanation of the nature of such conduct, although not a formal definition of this phrase, was sufficiently clear and comprehensible and not misleading to the jury.

The defendant presses its exception to that portion of the charge in which the trial justice instructed the jury in substance that the plaintiff, under the circumstances, was a licensee, and could recover only if they found that he was in the exercise of due care at the time of the accident and that the defendant was guilty of willful, wanton and reckless conduct which was the proximate cause of the plaintiff's injury. As taken, this exception was based solely on the ground that, since there was no count in the plaintiff's declaration in trespass, he should not be permitted to recover by showing such above-described conduct, which the defendant maintained amounted to a direct trespass and not negligence on its part.

The declaration was not demurred to. At the trial, the defendant, in contesting the plaintiff's theory of his case, strongly urged upon the trial justice that, under the evidence presented, the plaintiff was a bare licensee to whom the defendant owed merely the duty to refrain from injuring him by reason of willful, wanton and reckless conduct. As already indicated, the trial justice adopted this view, and submitted the case to the jury on the fifth and sixth counts of the declaration in accordance with the defendant's above claim. Thus the charge on this point, given at the defendant's request, became the law of the case as far as the present proceeding is concerned.

In our opinion, the defendant, under these circumstances, should not be allowed to argue for the first time in this court that, in effect, a departure exists. It is now too late for it to make such a contention. That issue is not properly raised by the exception before us. During the trial the defendant did not question the form of the declaration, but placed its own interpretation thereon under the evidence in the case, and persuaded the trial justice to rule in favor of that interpretation. In this situation it cannot now attack the declaration under which its view of the law was accepted by the trial justice. The defendant cannot be permitted, in this court, to take a position as to the sufficiency of the declaration entirely inconsistent with that adopted by it during the trial, on which position the theory of law it then urged was applied to the facts in evidence by the trial justice. We find, therefore, no prejudicial error in the charge as given or in the refusal to charge as requested by the defendant, and all its exceptions in this connection are overruled.

The defendant also is pressing a large number of exceptions which it took during the course of the trial to various rulings of the trial justice, chiefly on the rejection or admission of evidence. These exceptions have been examined by us and, as in our opinion none of these rulings constitutes prejudicial error, we find these exceptions to be without merit. Likewise, it is our judgment that the trial justice did not err in refusing to take the case from the jury by reason of an answer given by the plaintiff in direct examination in relation to a statement made to him by the superintendent of the building, relating to other accidents on the stairway. The answer was given before objection thereto could be interposed, and the answer was ordered stricken out by the trial justice. Under the circumstances we are of the opinion that the matter of passing the case, because of possible prejudice to the defendant, rested in the sound discretion of the trial justice, and we do not find that in ruling as he did he abused that discretion. The defendant, therefore, takes nothing by this exception.

The defendant also excepted to the admission in evidence of that portion of the statement just above mentioned which did not contain any specific reference to other accidents. The part of the statement so admitted was vague, and was open to at least two reasonable meanings, one of which would relate to or bear upon notice to the defendant of an alleged dangerous condition existing in connection with the said stairway. Considered in that light, we are of the opinion that, entirely apart from the reason assigned for its admission by the trial justice, the portion of the statement in question was properly admitted by him, and that his ruling in that respect was not prejudicial error. All of the defendant's exceptions above referred to are overruled.

The defendant's motion for a new trial was based on the usual grounds. In support of its claim of newly discovered evidence the affidavits of two of defendant's attorneys were filed. These affidavits, in general, were to the effect that, after the verdict of the jury had been rendered, the foreman of the jury consulted the plaintiff's attorney in regard to obtaining employment. No affidavit from the foreman was filed. The defendant did not in any way question the conduct of the plaintiff's attorney in the premises, but argued that, under the circumstances, the juror was not impartial and unbiased.

The trial justice gave careful consideration to this point in passing upon the motion for a new trial and decided that the affidavits failed entirely to support the defendant's claim of bias. We are in full agreement with the decision of the trial justice. The defendant's argument appears to be based on nothing more than mere suspicion unsupported by facts. The affidavits, assuming they are of the proper type and scope to raise the question argued by the defendant, contain nothing which tends to show any improper conduct on the part of the juror either before or after the verdict was rendered. The defendant's contention in this connection is, therefore, without merit.

In support of its said motion the defendant also argues that the verdict is against the fair preponderance of the evidence on all of the issues involved. The defendant first urges that, by reason of certain alleged differences between the testimony which plaintiff had given in the prior trial, hereinbefore referred to, and that which he gave in the present trial, his testimony herein is so impeached that it is not worthy of credence and should be entirely disregarded. In this matter, however, it appeared that the defendant relied in part on testimony in the prior case which was not before the jury in the instant case, and which was brought to the attention of the trial justice herein only on the issue of whether or not the prior trial was *res adjudicata* of the present one. In so far as such testimony or any part of it was properly admitted and before the jury, the trial justice, in deciding the defendant's motion, declined to follow its above contention, and held that there was no such material contradiction in the plaintiff's testimony in the two trials as would warrant disregarding, in the instant case, his entire testimony on the ground that it was not worthy of belief, but that any differences in such testimony, properly before the jury, went merely to the weight of his testimony. We agree with such holding.

In passing upon the defendant's motion, the trial justice referred to the evidence in the case in relation to the issue of the defendant's liability, approved the verdict in that regard, and came to the conclusion that it was supported by a fair preponderance of the evidence. In discussing the defendant's conduct, as bearing upon its alleged willfulness, wantonness and recklessness in maintaining the stairway under the peculiar conditions and circumstances described in the evidence, and in discussing the plaintiff's conduct in relation to the issue of contributory negligence, the trial justice referred to the alleged impressions or illusions which the plaintiff claimed that he received from the lighting in the hallway, the location of objects, the color of the walls and floor, and

the general manner of construction employed. The trial justice also pointed out, among other things, that the stairway was located in the hallway of a large office building in the center of Providence; that the building was visited by many persons daily to the defendant's knowledge; and that the stairway was unguarded at the time of the plaintiff's accident. To better understand the evidence, the trial justice and the jury took a view of the corridor and of the stairway in question early in the trial.

Unless we come to the conclusion that the trial justice was clearly wrong in his decision approving the verdict on the issue of the defendant's liability, then, under our well-established rule, we do not disturb such decision. We have considered the evidence bearing upon that issue and we find that the decision of the trial justice was not clearly wrong and, therefore, that his ruling in that respect was without error.

Finally, in support of its motion, the defendant contends that the damages awarded by the jury are excessive. The evidence shows that, as a result of the fall upon the stairs, the plaintiff suffered a compression fracture of his second lumbar vertebra and a fracture of the fourth and fifth metatarsal bones of his left small toe. He was taken to a hospital where X-ray photographs were taken of his back and left foot, and ultimately a cast was applied to his back. He remained in the hospital until October 2, 1937. The cast was removed October 19, 1937, and he then wore a steel brace for his back for about eight months continuously, and off and on until August 1939, when he made a trip to the World's Fair in New York. He was discharged by his doctor October 25, 1938. Since that date he has received some osteopathic treatments.

The plaintiff's left foot developed considerable swelling, but eventually was also placed in a cast for about four weeks. The fracture of the fourth metatarsal bone responded

to treatment and knit satisfactorily. However, the alignment of the fragments of the fifth metatarsal bone was bad and there was an overriding of the fragments, which would not stay in proper position. One of these fragments protruded downward toward the sole of the foot and remained in that position at the time of the trial. The plaintiff's foot was padded when he left the hospital, and for two weeks he had to use crutches, and for six weeks thereafter a cane when walking. He also had to be fitted with a special pad or lining, apparently of rubber, inside his left shoe to take the pressure, when he walked, off the area where the misplaced bone was.

The plaintiff testified that he suffered severe pain both in his back and his foot for a considerable period after the accident, such pain gradually lessening as time went on. His doctor also gave evidence that the injuries were painful and that the plaintiff would probably always have some discomfort from his back. The plaintiff testified that, at the time of the trial, his back became tired easily; that occasionally it still ached; and that the injury interfered, to some extent, with his sitting in the position customarily assumed by a tailor. As to his foot, he testified that he had no particular discomfort if he wore the pad or lining unless he stepped on a pebble or some similar substance. The plaintiff also gave evidence that he suffered a nervous shock by reason of the accident.

It appeared from the evidence that in conducting his tailoring business the plaintiff employed several other persons. The business continued while the plaintiff was incapacitated by reason of his injuries, but he was compelled to employ some additional workers. This situation continued for a time after the plaintiff returned to work, which apparently was in December 1937, although he was unable until the following spring to do all the work he had customarily performed prior to the accident. According to the plaintiff's evidence his total monetary loss because of the accident

amounted to approximately $2000. This included hospital bills, doctors' bills, wages paid extra employees, and his inability to draw any money for himself from his own business. The jury, therefore, must have awarded the plaintiff $13,000 for other damages resulting from his injuries and for his pain and suffering.

In view of the above situation, as disclosed by the evidence in relation to the plaintiff's damages, we are of the opinion that the verdict of the jury is clearly and grossly excessive. While the plaintiff undoubtedly still suffers discomfort from the accident, and probably will continue to do so at times in the future, on the whole his recovery, in view of his injuries, was good. His back and fourth metatarsal bone responded well to the treatment given, and there is evidence that an operation on his foot would probably relieve him of the condition existing because the fragments of the fifth metatarsal bone are out of alignment. Further, the plaintiff is able to conduct his business substantially as before he was hurt.

In passing upon the motion for a new trial the trial justice expressly refused to exercise his experienced and independent judgment as to the verdict in so far as it related to the amount of damages awarded by the jury. In our opinion the trial justice erred in clearly failing, by his own statement, to apply our long-established rule, which is for the benefit of all the parties in a litigated case. Such rule requires a trial justice to exercise such judgment in passing upon the amount of the verdict, when it is questioned on a motion for a new trial, just as much as upon the issue of liability. This, of course, is not done for the purpose of arbitrarily substituting his mere personal opinion as to damages for that of the jury; but is done to determine whether or not the amount of the verdict as fixed by them is, in his independent judgment, supported by the weight of the evidence and does substantial justice between the

parties. By reason of the failure of the trial justice to perform his duty, as above indicated, his mere formal approval of the amount of the verdict carries no weight and is of no assistance to this court.

It is difficult, in a case such as this, where the trial justice, who is in a better position than we are to appraise the witnesses and the evidence, has failed to exercise his independent judgment as aforesaid, for this court to fix damages which would be fair and just to the parties concerned. However, in attempting to perform our duty in that respect we have carefully considered the evidence in the present case and, after so doing, have come to the conclusion that the jury, in awarding damages, must have lost sight of the good recovery made by the plaintiff; of the fact that the severe pain and suffering endured by him for a time immediately after the accident progressively lessened and eventually almost passed away entirely; that an operation on his foot would probably relieve him; that he was not lame and did not require a special shoe; and, considering his age, that apparently he would in the future suffer no lessening of his earning capacity. We are of the opinion, therefore, that the sum of $10,000 should be awarded the plaintiff, rather than the sum fixed by the jury. The defendant's exception in this connection is sustained.

All of the defendant's exceptions, therefore, are overruled save its exception to the refusal of the trial justice to grant its motion for a new trial, which exception is sustained only on the ground that the damages awarded by the jury are clearly and grossly excessive.

The case is remitted to the superior court for a new trial on all issues, unless the plaintiff, on or before January 3, 1941, shall file in the office of the clerk of the superior court a remittitur of all of such verdict in excess of $10,000. If the plaintiff shall file such a remittitur, the superior court is di-

rected to enter judgment on the verdict as reduced by the remittitur.

### ON MOTION FOR REARGUMENT

PER CURIAM. After the filing of our opinion the defendant, by leave of court, filed, in effect, a motion for reargument. We have carefully considered said motion and the reasons assigned therefor.

As the motion contains no matter which was not fully considered and passed upon before the filing of said opinion, the motion is denied and dismissed.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for plaintiff.

*Benjamin F. Lindemuth, John W. Baker, Daniel S. T. Hinman,* for defendant.